# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TORRANCE D. WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>Defendant. | No. 16 C 7098<br><br>Magistrate Judge Susan E. Cox |

## MEMORANDUM OPINION AND ORDER

Plaintiff Torrance Williams ("Plaintiff") filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). Plaintiff has filed a brief, which this Court will construe as a motion for summary judgment [dkt. 15], and the Commissioner has filed a cross-motion for summary judgment [dkt. 17]. After reviewing the record, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment. The ALJ's decision is reversed and the case is remanded for further proceedings consistent with this Opinion.

## BACKGROUND

### I. Procedural History

Plaintiff filed applications for DIB and SSI on December 20, 2012, alleging a disability onset date of June 1, 2002. (R. 14, 154–57). These claims were denied initially on April 11, 2013

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

and again upon reconsideration on August 28, 2013. (R. 23, 78–155). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on September 30, 2013. (R. 23). On September 18, 2014, Plaintiff, represented by counsel, appeared by video and testified before ALJ Joel Fina. (R. 40–77). The ALJ also heard testimony from medical expert ("ME") Ashok G. Jilhewar, M.D., and vocational expert ("VE") Aimee Mowery. (*Id.*). At the hearing, Plaintiff amended his disability onset date to August, 31, 2013, resulting in a dismissal of his claim for DIB. (R. 23, 234). On March 2, 2015, the ALJ issued a written decision denying Plaintiff's application for SSI. (R. 23–34). The Appeals Council ("AC") denied review on May 12, 2016, thereby rendering the ALJ's decision as the final decision of the agency. (R. 1–9); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

## II. Medical Evidence

The records reflect Plaintiff was diagnosed with scoliosis as a child. (R. 487). On August 29, 2013, the amended alleged onset date, Plaintiff sought treatment from the Christian Community Health Center ("CCHC") for complaints of back pain. (R. 451). His physician referred him to physical therapy and prescribed Naproxen and Flexeril for his pain. (*Id.*). In November 2013, Plaintiff reported that he had attended his first physical therapy session, and that the pain medications were helpful. (R. 446). The provider referred Plaintiff to the orthopedic clinic and diagnosed scoliosis of the thoracic and lumbar spines. (R. 446–47). A hernia of the abdominal cavity was also documented. (R. 446).

Plaintiff attended physical therapy at the MetroSouth Medical Center from November 11, 2013, through January 13, 2014. (R. 475–95). At his initial evaluation, Plaintiff reported that he had been diagnosed with scoliosis as a teenager, but had declined surgery secondary to his activity in sports. (R. 487). He indicated that his pain "got bad" approximately 11 years ago, and

that he experienced increased symptoms following a recent colon resection surgery. (*Id*.). Plaintiff stated that he had attempted physical therapy in the past without any lasting improvement, but that he did experience some relief with the use of pain medication and anti-inflammatory medication. (*Id*.). He presented with scoliosis primarily in his thoracic region that was convex to the left and a prominent rib hump was noted with forward bending. (*Id*.). At the time of the evaluation, Plaintiff described constant pain (7/10 in severity) in his left mid to lower thoracic region, located in the area of his rib hump. (*Id*.). The pain was aggravated by prolonged standing. (*Id*.). Plaintiff attended three therapy sessions during December 2013, where he demonstrated improvement but continued to report only temporary relief from therapy. (R. 476–78). Plaintiff was discharged from therapy to a home exercise program on January 13, 2014. (R. 493). According to the discharge summary, therapy did help manage Plaintiff's pain, although he continued to experience pain with activity and limited range of motion. (*Id*.).

On February 17, 2014, Plaintiff returned to CCHC with complaints of worsening back pain. (R. 444). He rated his current pain level as 5/10 and indicated that the pain worsened with standing and physical activity. (*Id*.). Physical examination revealed tenderness on the right side of the lower thoracic spine with swelling and decreased flexion and extension. (R. 445). The doctor recommended x-rays of the thoracic and lumbar spines, continued Plaintiff's current medications, and referred him to orthopedics for evaluation and treatment. (*Id*.). At his next visit on August 18, 2014, Plaintiff complained of severe back pain that began the previous day, which he rated as 8/10 in severity. (R. 454). He reported that he had been discharged from physical therapy due to insurance issues, and requested medication refills. (*Id*.). He was again referred to physical therapy and remained on Naproxen and Flexeril. (*Id*.).

3

At an August 21, 2014 physical therapy evaluation at the University of Illinois Medical Center at Chicago, Plaintiff described his pain as "sharp" and "spasm," and rated it at 5/10 in severity and best, and a 10/10 at worst. (R. 465). He stated that he felt as though he "falls in a hole" when he steps with the left leg. (*Id*.). The pain worsened with walking, transfers, and bending. (*Id*.). Plaintiff stated that since his abdominal surgery for diverticulitis in 2012, his back had "never been the same." (*Id*.). X-rays of the spine confirmed 57 degree thoracolumbar scoliosis and 54 degree right T12-L4 scoliosis. (*Id*.). Mr. Williams ambulated with an antalgic gait and demonstrated reduced lumbar flexion, extension, and right bending. (R. 466). Sacroiliac joint testing was positive for low back pain. (R. 467).

Plaintiff presented to Krzysztof Siemionow, M.D., for an orthopedic evaluation on September 9, 2014. (R. 517–18). He reported that he had been experiencing increased back pain for the past two years, ever since he had surgery for his diverticulitis. (R. 517). Plaintiff stated that he was unable to sit for a long time and his activity was limited. (*Id*.). Physical examination revealed a right thoracic curve and a lumbar compensatory curve. (R. 518). The right shoulder was noted to be slightly higher than the left. (*Id*.). Plaintiff was able to walk on his heels and toes, had 5/5 strength, and intact sensation to light touch. (*Id*.). Dr. Siemionow ordered an MRI of the lumbar and thoracic spines to rule out infection or issues that may have arisen subsequent to his diverticulitis surgery, and recommended continued physical therapy. (*Id*.).

When Plaintiff followed up with Dr. Siemionow on October 7, 2014, he reported he had finished physical therapy the previous week, and that it had helped him tailor his activities enough so that he would have mild pain during the day. (R. 503). He stated that he still had some spasms and episodes of moderate to severe pain, but only if he pushed himself too hard. (*Id*.). Physical examination was unremarkable. (*Id*.). Dr. Siemionow reviewed the recent MRI results,

noting there were no signs of infection, "which correlates with [Plaintiff's] clinical symptoms as he is doing better." (R. 504). Plaintiff was instructed to follow up once a year or on an as needed basis. (*Id*.).

### III. Testimony

Plaintiff testified that he was unable to work because he could not pass physical examinations that many employers required. (R. 48). Following surgery to treat diverticulitis, he experienced a significant increase in his scoliosis related back pain. *Id*. Doctors informed him that the surgery caused the stomach muscles to go "to sleep" and the back muscles, therefore, needed to compensate. (R. 57). The pain most prominently affected the middle and lower back. (R. 53). The pain was sharp and throbbing. (R. 54). Moving or remaining in a static position aggravated the pain. (R. 55). Pain interrupted his sleep and he napped during the day as a result. (R. 52, 58). He could stand for ten to fifteen minutes at one time before he needed to change positions. (R. 53). He could walk the distance of one block before feeling pain. (*Id*.). He tried not to lift more than ten pounds at one time. (R. 58). Physical therapy provided only temporary pain relief. (*Id*.). His prescription medications (Flexeril and Naproxen) caused drowsiness. (R. 56). He was able to perform basic household chores, read newspapers and magazines, and watched television. (R. 50–51). He used the bathroom up to ten times each day and had five bowel movements each day. (R. 61).

The ME testified that the record lacked clinical findings that related to Plaintiff's allegations of back pain. (R. 61). The record contained "deficiencies" that related to evidence of Plaintiff's back pain. (R. 64). Diverticulitis did not constitute a medically determinable severe impairment, for it was not expected to meet the 12-month durational requirement. (R. 65). The record did not contain sufficient evidence upon which the medical expert could base an

evaluation of the effects of scoliosis on Plaintiff's RFC. (R. 66–67). The abdominal wall hernia constituted a severe medically determinable impairment and individuals who suffered an abdominal wall hernia were restricted to work that was performed at the light exertional level. (R. 68). Plaintiff retained the functional capacity to perform work at the light exertional level but could never climb ladders, ropes or scaffolds and could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (R. 69). His opinion was subject to change based on additional medical evidence. (R. 69-70).

## IV.     ALJ Decision

On March 2, 2015, the ALJ issued a written determination denying Plaintiff's SSI application. (R. 23–34). At step one, the ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since August 31, 2013, the amended alleged disability onset date. (R. 25). At step two, the ALJ found that Plaintiff had the severe impairments of levoconvex rotoscoliosis of the lumbar spine with degenerative disc disease and mild left neuroforaminal narrowing at L4-L5; dextroscoliosis of the thoracolumbar spine; and a hernia. (*Id.*). He also determined Plaintiff's diverticulitis to be a non-severe impairment. (R. 26). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 26). The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could never climb ladders, ropes, or scaffolds, and he could only frequently climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. (R. 27). At Step four, the ALJ determined that Plaintiff is unable to perform any past

---

[2] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

relevant work. (R. 32). Finally, at step five, the ALJ determined that, upon consideration Plaintiff's age, education, work experience, RFC, and the VE's testimony, jobs existed in significant numbers in the national economy that Plaintiff can perform, such as cashier, office helper, or hand packager. (R. 33). Accordingly, the ALJ found Plaintiff not disabled as defined by the act from the alleged onset date of August 31, 2013 through the date of the decision. (R. 34).

## STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[ ] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## ANALYSIS

Plaintiff raises three arguments on appeal: (1) the ALJ erred in failing to submit additional evidence to the medical expert for review; (2) the ALJ erred in failing to include all work-related functional restrictions in his RFC determination; and (3) the ALJ improperly assessed Plaintiff's subjective allegations and credibility. [dkt. 15, at 8–23].

**A.     The ALJ's Evaluation of Plaintiff's Subjective Symptoms**

Because an RFC assessment will often "depend heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of [his] symptoms," the Court first addresses Plaintiff's argument that the ALJ improperly analyzed his symptom statements. *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). The Social Security Administration (the "Administration") recently clarified its sub-regulatory policies about symptom evaluation, eliminating the term "credibility" to emphasize that "subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1 (effective March 16, 2016). "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). The underlying regulations and applicable Seventh Circuit law about assessing claimants' statements remain unchanged. 20 C.F.R. § 404.1529; *see Cole,* 831 F.3d at 412.

Under the regulations, when a claimant has a medically determinable impairment that could reasonably be expected to produce the claimed subjective symptoms, the ALJ must evaluate the intensity and persistence of those symptoms pursuant to objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c). Among the evidence to be considered are "the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ cannot discount a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449

F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). SSR 16-3p, like former SSR 96-7p, directs the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

An ALJ's evaluation of a claimant's subjective symptoms must be supported by substantial evidence and may be overturned only if it is "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2010). Even then, the ALJ still must adequately explain his subjective symptom determination "by discussing specific reasons supported by the record." *Pepper*, 712 F.3d at 367 (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)). Failure to do so may be grounds for reversal. *Id.* (relying on *Bjornson*, 671 F.3d at 649). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (citation omitted).

The Court finds that the reasons offered by the ALJ for discounting Plaintiff's symptom statements are legally insufficient and not supported by substantial evidence, necessitating remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

*1. Daily activities*

First, the ALJ did not explain how Plaintiff's ability to perform limited daily activities undermined his allegations of pain or equated to an ability to carry out full-time work. While ALJs are permitted to consider daily activities when assessing a claimant's subjective symptom statements, the Seventh Circuit has repeatedly instructed that ALJs must not place "undue

weight" on those activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2017); *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern work-place"); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Moreover, when an ALJ does examine a claimant's daily activities, the analysis "must be done with care." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

Here, the ALJ stated that "[Plaintiff] has described daily activities that are consistent for a person with [the] above-stated residual functional capacity." (R. 31). But the ALJ did not adequately explain how Plaintiff's ability to assist his 86-year-old mother with cooking, cleaning, and grocery shopping contradicted his allegations of pain and related limitations. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence."); *Ghiselli*, 837 F.3d at 778 (finding error when ALJ did not "identify a basis for his conclusion that the life activities [claimant] reported were inconsistent with the physical impairments she claimed"); *Hughes v. Astrue*, 705 F.3d 276, 278–79 (7th Cir. 2013) (finding that the ALJ improperly discounted claimant's allegations by failing to recognize that performing daily activities out of necessity can still cause pain). Likewise, these limited activities do not demonstrate that Plaintiff can perform full-time work. *See Bjornson*, 671 F.3d at 647 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.") (collecting cases); *Carradine v.*

*Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (ALJ failed to consider the difference between a person being able to engage in sporadic physical activities and [his] being able to work eight hours a day five consecutive days of the week).

### *2. "Routine and conservative treatment"*

The ALJ determined that Plaintiff's treatment "has been essentially routine and/or conservative in nature." (R. 31). He specifically cited Plaintiff's reported improvement with physical therapy, and the absence of steroid injections and surgery from Plaintiff's course of treatment. (*Id.*). While the ALJ "may consider conservative treatment in assessing the severity of a condition," he should cite medical evidence about what kind of treatment would be appropriate. *Brown v. Barnhart*, 298 F. Supp. 2d 773, 797 (E.D. Wis. 2004) (citing *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1096 (E.D. Wis. 2001)). Instead of citing evidence, the ALJ impermissibly relied on his own lay opinion that steroid injections (or some other form of more frequent or aggressive treatment) would have been pursued if Plaintiff's symptoms were as severe as alleged. *See McGuigan v. Colvin*, No. 13 CV 1539, 2015 WL 846415, at *5 (S.D. Ind. Feb. 25, 2015) ("by not citing, or even alluding to, any expert medical evidence or opinion that non-routine or more aggressive treatments . . . would have been prescribed, recommended, or expected if [Plaintiff's] impairments and/or symptoms were as severe as he alleged, the ALJ was expressing a medical opinion for which he was not qualified.").

Furthermore, while the ALJ placed particular emphasis on the fact that Plaintiff had declined surgery, it is important to note the circumstances under which Plaintiff made that decision. The records reflect that Plaintiff was diagnosed with scoliosis as a teenager, but declined surgery "secondary to his activity in sports." (R. 487, 517). The ALJ has pointed to no evidence from the relevant time period indicating that Plaintiff's treating orthopedist

11

recommended surgery or steroid injections and Plaintiff chose not to follow that recommendation. On remand, the ALJ should ask why Plaintiff's treatment was not more aggressive, and if the ALJ determines that the treatment was conservative, he shall discuss why more aggressive treatment would have been appropriate. *See Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009).

Similarly, the ALJ erred in discounting Plaintiff's symptom statements because "the therapy notes and orthopedic office visit notes document improvement with therapy and normal strength." (R. 31). First, the ALJ failed to explain how a finding of normal strength undermined Plaintiff's allegations of pain and limitations. Additionally, there can be a great difference between "a patient who responds to treatment and one who is able to enter the workforce." *Scott*, 647 F.3d at 739. Indeed, "improvement" by itself does not demonstrate a lack of disabling symptoms. *See Salazar v. Colvin*, No. 13 C 9230, 2015 WL 6165142, at *4 (N.D. Ill. Oct. 20, 2015) ("The ALJ's reliance on the stated 60% improvement is meaningless because she failed to establish a baseline from which the stated improvement can be measured . . . It is unclear exactly what functional limitations may remain even after as much as a 60% improvement in his condition."). In order to use Plaintiff's response to treatment as a basis for undermining his credibility, "the ALJ must connect how his improvement restored Plaintiff's ability to work." *Johnson v. Colvin*, No. 15 C 9737, 2017 WL 219514, at *5 (N.D. Ill. Jan. 19, 2017); *see also Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [ ] work"); *Scott*, 647 F.3d at 740.

### *3. Exercise on a regular basis*

Additionally, it was improper for the ALJ to rely on exercise, as a form of therapy, to discredit Plaintiff's statements. *See Scrogham v. Colvin*, 765 F.3d 685, 701–02 (7th Cir. 2014) (it

was unreasonable for the ALJ to rely upon a claimant's walking because it was a form of therapy and did not rise to the level of full-time work activity); *Carradine*, 360 F.3d at 755–56 ("Since exercise is one of the treatments that doctors have prescribed for Carradine's pain, and she does not claim to be paralyzed, we cannot see how her being able to walk two miles is inconsistent with her suffering severe pain."). The ALJ failed to consider the nature of Plaintiff's daily exercises, which consisted of massage therapy and stretching exercises recommended by his physical therapist. The ALJ offered no explanation as to how these activities are inconsistent with Plaintiff's reported symptoms and limitations.

### *4. Renewed driver's license*

Finally, the Court is somewhat puzzled by the ALJ's reliance on Plaintiff's decision to renew his driver's license after seventeen years as a basis for undermining his subjective allegations. (R. 31). Plaintiff testified that he lost his license seventeen years ago as the result of unpaid tickets. (R. 49). He never alleged that he did not drive because he was physically unable. Thus, it is unclear how Plaintiff's decision to obtain a driver's license makes him less credible. The ALJ was required to construct a logical and accurate bridge from the evidence to his conclusion, but failed to do so here. *Murphy v. Astrue*, 759 F.3d 811, 815 (7th Cir. 2014).

In sum, the ALJ's explanation was legally insufficient to discount Plaintiff's symptom statements. While the Court does not hold that the ALJ should have accepted Plaintiff's allegations, the foundation underlying his assessment was inadequate. On remand, the ALJ should re-evaluate Plaintiff's subjective symptoms in light of SSR 16-3p. In particular, SSR 16-3p states that it is "not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms;" instead, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and

supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." The ALJ should take heed to follow the requirements of SSR 16-3p.

**B.      Consideration of the September 2014 MRI Results**

Plaintiff also asserts that the ALJ erred by failing to submit the September 2014 MRI evidence to the ME for review. The Court agrees. Here, the ME specifically testified that he was unable to offer an opinion as to how Plaintiff's scoliosis affected his ability to perform work tasks, and that his opinion of Plaintiff's functional capacity was subject to change based on additional medical evidence. (R. 66–67, 69–70). The MRI of the lumbar spine reflected generalized disc bulge with right facet arthropathy at L1-L2, generalized disc bulge with bilateral facet arthropathy at L3-L4, generalized disc bulge with left paracentral disc herniation that caused narrowing of the left neural foramina and bilateral facet arthropathy at L4-L5, and bilateral facet arthropathy at L5-S1. (R. 510). The MRI of the thoracic spine reflected severe dextrorotoscoliosis of the thoracolumbar spine with segmentation at the mid thoracic spine. (R. 512). These findings potentially provide objective support for a more restrictive RFC, or, at a minimum, objective support for Plaintiff's allegations of pain and related limitations. *See Salas v. Colvin*, No. 15 C 8139, 2016 WL 7209803, at *5–6 (N.D. Ill. Dec. 12, 2016). The ME, whose opinion the ALJ gave "substantial weight," did not have the opportunity to consider how these findings would affect Plaintiff's functional capacity. Furthermore, the ALJ did not even mention the results in his opinion, other than to state that the "MRIs indicate there were no signs of infection, which correlated to his clinical symptoms, as the claimant was doing better." (R. 30). The Court concludes that the ALJ's failure to submit the MRI results to a medical expert for

analysis requires remand. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (an ALJ is required to submit all "new and potentially decisive" medical evidence to "medical scrutiny.").

**C.      Other Issues**

Because the Court remands on the errors identified above, it need not explore in detail the other arguments posited by Plaintiff on appeal since the analysis would not change the results in this case. The Commissioner, however, should not assume these issues were omitted from the opinion because no error was found.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This matter is remanded for further proceedings consistent with this opinion.

Date: 10/19/2017

_____
U.S. Magistrate Judge, Susan E. Cox